UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EDWARD M. HAMPTON,

        Plaintiff,

    v.                                     CAUSE NO. 3:22-CV-765 DRL

ASHLEY WILSON,

        Defendant.

## OPINION AND ORDER

Edward M. Hampton, a prisoner without a lawyer, is proceeding in this case "against Nurse Ashley Wilson in her individual capacity for compensatory and punitive damages for being deliberately indifferent to his serious need for medical treatment for his migraine headaches, TMJ, and GERD, in July and August 2022, when he was housed at the Miami Correctional Facility, in violation of the Eighth Amendment[.]" ECF 15 at 4. Nurse Wilson filed a motion for summary judgment. ECF 63. Mr. Hampton filed a response and Nurse Wilson filed a reply. ECF 68, 69, 70, 73. The summary judgment motion is now ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving

party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the court of appeals has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98.

The law has "identified several circumstances that can be enough to show deliberate indifference" by a medical professional. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). "First, and most obvious, is [an] official's decision to ignore a request for medical assistance." *Id.* Second, an inmate can provide evidence the medical professional "persist[ed] in a course of treatment known to be ineffective." *Id.* at 730. Third, an inmate can provide evidence of "an inexplicable delay in treatment which serves no penological interest." *Id.*; *see also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009) (state employees could be liable for four-day delay where prisoner complained his intravenous therapy was causing him pain).

Nurse Wilson provides an affidavit and Mr. Hampton's medical records, which show the following facts: Between July and August 2022, Nurse Wilson responded to several Healthcare Request Forms (HCRF) from Mr. Hampton, in which he requested treatment for various conditions including migraines, sinus headaches, GERD, fibromyalgia, and ringworm. Nurse Wilson examined Mr. Hampton and provided treatment in response to the first two HCRF, but declined to see him or provide any treatment in response to the remaining HCRF. ECF 63-1 at 4-8.

Specifically, on July 12, 2022, Mr. Hampton submitted HCRF # 314424, complaining of severe ringworm on his feet and ankles and requesting antibiotics and medicated antifungal cream. ECF 63-1 at 4; ECF 63-2 at 1. On July 14, Nurse Wilson assessed Mr. Hampton at sick call and examined his feet, which had redness between the toes and cracking of the skin but no signs of infection. ECF 63-1 at 4; ECF 63-2 at 2-4. Nurse Wilson educated Mr. Hampton to wash and dry his feet well and provided him with antifungal cream. *Id.*

On July 23, 2022, Mr. Hampton submitted HCRF # 314475, complaining of severe sinus headaches and requesting a daily allergy medication. ECF 63-1 at 4; ECF 63-2 at 5. On August 4, Nurse Wilson assessed Mr. Hampton in sick call and he complained he was having sinus headaches from a sinus cavity rupture and serious migraines due to his TMJ. ECF 63-1 at 4; ECF 63-2 at 6-8. He requested sinus medication and medicated shampoo. *Id.* Nurse Wilson reported Mr. Hampton's complaints to Dr. Carl Kuenzli, who gave a verbal order for an allergy pill called Singulair. *Id.*

On August 6, 2022, Mr. Hampton submitted HCRF # 314679, complaining the antifungal cream was not working for his ringworm and he needed something stronger. ECF 63-1 at 5-6; ECF 63-2 at 9. Nurse Wilson responded to this HCRF two days later, stating "Just seen 8/4 should have said something then!" *Id.*[1]

---

[1] Nurse Wilson attests she did not believe Mr. Hampton's complaints warranted treatment because he'd just been given antifungal cream on July 14 and needed to give the cream more time to work. ECF 36-1 at 7. Mr. Hampton responds he'd been using the antifungal cream for nearly a month and it had been ineffective at treating his ringworm, as the infection was beginning to eat a hole into his foot. ECF 68 at 4.

4

On August 8, 2022, Mr. Hampton submitted HCRF # 308684, stating "I need something for my migraines, please." ECF 63-1 at 6; ECF 63-2 at 10. On August 10, 2022, Nurse Wilson responded to this HCRF stating "You were started on allergy pill as you said it's the only thing that helps your HA. You will not be seen again for above. You were just seen 7/14 + 8/4 by medical." *Id.*[2]

Also on August 8, 2022, Mr. Hampton submitted HCRF # 308683, requesting his Pepcid dosage be increased. ECF 36-1 at 6; ECF 36-2 at 11. Nurse Wilson responded to this HCRF, stating "You were just seen 7/14 + 8/4 this should have been discussed then. I'm not pulling you out [every] week. You are going to be charged for all HCR." *Id.*

Also on August 8, 2022, Mr. Hampton submitted HCRF # 314621, requesting Gabapentin or Neurontin to treat his fibromyalgia symptoms. ECF 36-1 at 7; ECF 36-2 at 12. Nurse Wilson responded to this HCRF, stating "You are not going to get Neurontin!!!" *Id.*

On August 14, 2022, Mr. Hampton submitted HCRF # 308590, complaining he needed a moisturizing cream for his itchy scalp, the cream he received for his ringworm wasn't working, he had serious migraines from TMJ issues, he needed Neurontin or Gabapentin for his fibromyalgia, and he needed his Pepcid dosage increased. ECF 36-1 at

---

[2] Mr. Hampton attests his migraine headaches, which are caused by his TMJ, are an entirely separate issue from his sinus headaches, which are caused by a sinus rupture. ECF 68 at 5. He argues that Nurse Wilson, as a registered nurse, knew his sinus headaches and migraine headaches were two separate conditions and that he hadn't received any treatment for his migraine headaches. *Id.*

8; ECF 36-2 at 13. An unsigned response[3] to this HCRF stated that Mr. Hampton "refused to be seen per officer on 9-1." *Id.*[4]

On September 8, 2022, Mr. Hampton was scheduled to be seen by a medical provider for a Chronic Care Clinic appointment, but the medical record indicates he refused to be seen for his appointment. ECF 36-1 at 8; ECF 36-2 at 16-17.[5]

On September 20, 2022, Mr. Hampton submitted HCRF # 309974, requesting to see a doctor. ECF 36-1 at 8; ECF 36-2 at 18. An unsigned response to this HCRF stated Mr. Hampton refused to be seen by a doctor on September 8, but noted he needed to be seen for "tactile hallucinations." *Id.*

On September 29, 2022, Mr. Hampton was seen by Nurse Practitioner Kimberly Myers and complained of his migraine symptoms. ECF 36-1 at 8-9; ECF 36-2 at 19-21. Nurse Myers ordered acetaminophen, instructed Mr. Hampton to "stop the drink mixes from chow hall," and discussed stopping some of his medications that could be causing the migraines. *Id.*

Nurse Wilson argues summary judgment is warranted in her favor because her responses to Mr. Hampton's HCRF were reasonable, appropriate, and within the nursing standard of care. ECF 64 at 6-9. Specifically, Nurse Wilson argues she reasonably

---

[3] Nurse Wilson attests she was not the staff member who responded to this HCRF, as it is not in her handwriting. ECF 63-1 at 8.

[4] Mr. Hampton disputes that he refused to be seen on this occasion and asserts that whoever wrote he refused this visit lied to prevent him from receiving medical care. ECF 68 at 5.

[5] Mr. Hampton again disputes that he refused to be seen on this occasion and asserts that whoever wrote this response lied to prevent him from receiving medical care. ECF 68 at 5.

determined Mr. Hampton didn't need to be seen or evaluated in response to the HCRF he submitted between August 6 and August 8 because she determined he needed to give the medications he'd been provided more time to work and would be able to discuss his conditions with a physician at his upcoming Chronic Care Clinic appointment on September 8. *Id.* at 7-8.

In his response, Mr. Hampton argues Nurse Wilson denied him constitutionally adequate medical care because she refused to see him or provide any treatment in response to his HCRF, which caused him to suffer needlessly. ECF 68. He attests it was impossible for him to see nursing staff or a medical provider due to Nurse Wilson's actions and he was forced to live for over 45 days without any treatment for his: (1) migraines, which prevented him from sleeping; (2) violent vomiting episodes caused by his GERD, which caused him to lose 30 pounds over a span of 90 days; (3) nerve damage in his neck and spine; and (4) ringworm. *Id.* at 2-5, 7. He attests that Nurse Wilson charged him for his HCRF despite providing no treatment, and falsely claimed he was refusing to see a medical provider without having him sign a refusal form. *Id.* at 3-5, 8.

Here, it's undisputed Nurse Wilson did not see, evaluate, or provide any treatment to Mr. Hampton in response to the four HCRF he submitted between August 6 and August 8, in which he complained of ongoing issues with his ringworm, migraine headaches, GERD, and fibromyalgia. It's undisputed Mr. Hampton was not seen or evaluated for these complaints until almost two months later when he saw a nurse

7

practitioner on September 29.[6] Though a reasonable jury could credit Nurse Wilson's testimony that she didn't believe Mr. Hampton needed to be seen for these complaints because he needed to give his medications more time to work, it could alternatively conclude that Nurse Wilson's refusal to evaluate Mr. Hampton or provide any treatment in response to these HCRF evidenced "a total unconcern" for his welfare.

Specifically, a reasonable jury could conclude Nurse Wilson: (1) "ignore[d] a request for medical assistance" by refusing to see Mr. Hampton or provide any treatment in response to these HCRF; (2) "persist[ed] in a course of treatment known to be ineffective" by refusing to see Mr. Hampton for his complaints that his medications were ineffective at treating his ringworm, migraine headaches, GERD, and fibromyalgia; and (3) caused "an inexplicable delay in treatment which serves no penological interest" by needlessly making him wait nearly two months to be evaluated. *See Petties*, 836 F.3d at 729-30; *Greeno v. Daley*, 414 F.3d 645, 654–55 (7th Cir. 2005) (reversing grant of summary judgment where the defendants refused to change the inmate's medication despite his repeated reports that it was not working); *White v. Woods*, 48 F.4th 853, 863 (7th Cir. 2022) (reasonable jury could conclude defendants' continued conservative treatment of inmate's condition was ineffective and delayed inmate from receiving adequate medical care). Because a reasonable jury could credit Mr. Hampton's version of events and

---

[6] Nurse Wilson argues Mr. Hampton refused to take advantage of earlier opportunities to see medical staff by refusing a nursing sick call visit on September 1 and a Chronic Care Clinic appointment on September 8. *Id.* at 8-9. But, as discussed, Mr. Hampton disputes that he refused to attend both of these appointments.

8

conclude Nurse Wilson denied him constitutionally adequate medical care by refusing to see him for his complaints in his HCRF, summary judgment must be denied.

For these reasons, the court DENIES Nurse Wilson's motion for summary judgment (ECF 63).

SO ORDERED.

February 14, 2025                                         *s/ Damon R. Leichty*
                                                          Judge, United States District Court